23-7608 May it please the Court, Alan Schorherbert on behalf of the Plaintiff Appellant, Mehul Trivedi. This case concerns discrimination in employment under Title VII of the New York State Human Rights Law in Section 1981. Dr. Trivedi worked at St. Peter's, P.C. for about a decade as a bariatric surgeon. He was very successful, actually. For a while, he was the only surgeon at St. Peter's, basically for eight years, approximately, until St. Peter's hired a surgeon, Adam Troy, at Samaritan Hospital. When they hired that surgeon, issues started to arise with that surgeon making allegations against Dr. Trivedi with regard to patient care and complications. Initially, it was done through a colleague of this other doctor, someone that worked in that other doctor's practice, Dr. Santoro. A list of patients was provided. It did not only include Dr. Trivedi's patients, but all patients, all attendings. That list was provided for what that person believed to be long-term TPN care. It was excessive, according to him. Counsel, let me cut to my problem. Let's assume that the district court is wrong as to what is adverse action. Let's assume that the district court is wrong on the question of who was the employer, who was not, that we treat them as together and that there was not notice. Let's assume that after, at the pretext stage, the procedures were not the usual ones, and so that some kind of pretext was there. But where is there enough evidence of anything of this has to do with race? The only thing that I see is that supposed comment, which may or may not be admissible for some purposes, that, yeah, color was part, but your client never says anything about it. The only allegation is that the other fellow was white and he was in due course fired. So where is there anything ultimately in this case that we can say that race was the ground and, therefore, everything else goes? Thank you, Your Honor. There is more evidence, actually. It's Dr. Hanks' deposition. He was the chief clinical officer. And on the executive committee, in his deposition, Joint Appendix 407 to 408, he mentions that the plaintiff here raised allegations of race discrimination, but Dr. Hanks did not recall specific details. He did recall the allegation, but not the details of the allegation. But how is that evidence? That's evidence of an allegation, and maybe that's relevant to the retaliation claim. But what Judge Calabresi is asking is where is there evidence that he was right? That's a fair point. And I think on the pleadings with regard to summary judgment, reading the papers most favorable to the non-moving party and all inferences to the non-moving party, based on the totality of circumstances where this was a very successful bariatric surgeon for many years, and all of a sudden you have this competitor who tells the fact. Well, but people get fired for nasty reasons, and that's why even the existence of pretext doesn't do anything much unless the pretext is itself linked to race. If there's one problem for the other side is that here we don't see some other ground for pretext, like I disliked it, and that's more usual. But where we don't have any ground for pretext, that doesn't help. And since I come back to my original question. It's a fair point. We believe, at least with the deposition and transcript testimony, Dr. Hanks, and what the court below found to be an admissible hearsay from the plaintiff with regard to Dr. Ross, that would have been sufficient, at least for the discrimination point. But to Your Honor's point, we believe the retaliation count is the strong count here. There are multiple repeated complaints by Dr. Trivedi. Well, he alleges two, is my rec. Two complaints that mention race or color. And to be clear, national origin was not pled and not in the EEOC, right? That's correct. So it pops up, but it's not at issue here. So race and color, he claims to have complained to two people about that. And then he made a series of complaints about Dr. McDonald being harassing and obnoxious. And it sounds like maybe other people agreed because he got fired two years later for his lack of interpersonal and clinical skills. But where in those is there an allegation of race discrimination? So going backwards, there is no specific reference to race discrimination, national origin discrimination, color discrimination in these e-mails. There are particular references to workplace harassment, bullying. And, again, not just one time, but multiple times. So should we take those? Is the assumption that a person, any person, any manager, should understand that an allegation of harassment or bullying is necessarily because of the complainant's membership in a protected class? So if a female employee says, I'm being bullied, that the management should assume that it's because of her gender. If a person of color complains, they should assume it's because of their color. Is that the leap we need to make? No. I do not believe a presumption should be made. I think it is based on the totality of the circumstances. These are repeated complaints. You note a couple on the record, but actually started in April 22nd, 2018. That's supported by the record, Joint Appendix 41 to 42. Then again, in January 2019, directly to Dr. Heitz. Yeah, but even if we were to read repeated complaints, repeated bullies of somebody who is in a protected class may get you by prima facie, because we've said prima facie is important and good, so is their convenient positions and so on. How does it get you by summary judgment? Well, I mean, so if the burden then shifts to the employer on legitimate, non-retaliatory, non-discriminatory reasons, I believe we establish pretext. There's quite a lot of evidence of pretext. I think the biggest one that is— But again, pretext has to be linked to race. It has to be linked to a protected ground. If the plaintiff shows pretext, but a pretext that is not linked to that, it doesn't get him any further. Well, we believe that— I'm sorry, Judge. Go ahead. We believe that pretext is strongly linked to Dr. Trivedi's complaint in March, of which about eight days later, it was referenced in the executive committee minutes that there were HR investigations involving Dr. Trivedi. In the following line, they asked for the committee to chime in, and then in the following line, they recommend his termination. Dr. Trivedi is then not notified of that for five weeks, and then told that he has another 120 days on his contract before that's terminated. So the timing itself, I think, is very strong with regard to the most latest complaint that he filed or submitted in March. The district court may well have been wrong of a question of causation because of timing, but that doesn't answer my question. Well, again, there is more than just the timing itself. There's the HR investigation that apparently was started after the fact, after he was informed of termination. There was a process of bypassing the board of directors altogether on the termination directly to the executive committee. There were allegations that he had issues with collegiality and peer relationships that is not supported in the record at all, and is quite disputed. And the only issues with regard to collegiality could have been with Dr. McDonald because he was the only other bariatric surgeon, and there were clearly issues between them. Those are not the only, I guess, disputed facts here that are material that should have went to a trial, but our position is there was enough here. Certainly, this record supports that. And, again, with regard to the complaints themselves, we can see they did not mention specifically race discrimination, color discrimination, national origin discrimination. But there are no magic words that are necessary. If I recall from your papers, at one point your client testified that he witnessed the termination of three Indian doctors, I think it was. But I didn't see anything out of how many people were terminated, anything that would give that a basis for drawing an inference. I believe there was a Filipino doctor that they hired as an endocrine specialist that was there to provide cross-coverage for Dr. Trivedi, and she was only there for under a year. There was a Middle Eastern doctor that was terminated, and there was a separate Indian doctor that was terminated. But to your point, Your Honor, there's not much in the record that was provided to kind of substantiate that a little further. All right. Thank you. You've still got some time on rebuttal. We'll hear from the defendant. Thank you, Your Honor. Adam Mastrolio on behalf of the appellee. Judge Calabresi started where I want to start, which is at its core, this case is about whether the medical group, which is made up of physicians, took any adverse employment action against the plaintiff because of his race or color or alleged protected activity. The district court considered the evidence in the record and held that it was devoid of any evidence that would support that claim. In fact, the record is clear that the Surgery Joint Operating Committee and the PC's Executive Committee were faced with a situation where there were escalating and serious concerns about the plaintiff's ability to provide safe care to his patients. Yeah. But what are we to do with the fact that the district court made all sorts of what I think erroneous statements about whether there was causation, whether there was pretext, and so on? If we look at this record, there are plenty of evidence that from his complaint, he was fired, that the lengths of time were there, and that the procedures which were done were anything but the ordinary. So there's plenty of evidence, as the other counsel had said, both of bullying, bullying, bullying, and then of pretext when their complaints were made. So what are we to make of that and then say that was any of it due to race? And we'd like, you know, there were several allegations about color and some allegations about the other people who were fired. Is that enough with so many errors that were made? Well, Your Honor, I would dispute that so many errors were made by the district court. I understand. However, I'll address each of your points. With respect to complaints that were made, the complaints that Dr. Trivedi made are in the record. They're in e-mails. You can see them, specifically what he says. And what he says is, at first, anonymous physicians are being critical of me. We later learn that that means Drs. McDonald and Dr. Santoro. That is not a race discrimination complaint. No matter how many times he says it, that is not the law in the Second Circuit. The employer has to understand that the complaint is based upon a protected characteristic. Here we have testimony from the HR individual who did the investigation. She didn't take this as a race or national origin complaint because it wasn't one. It was a dispute between doctors. It was a dispute about quality of care. And there is no dispute, Your Honor, that there is objective and clear evidence of worsening medical care that ultimately resulted in the death of a patient. Certainly, a group of doctors has the right to terminate the contract of one of their colleagues in the face of such significant concerns. There is absolutely no evidence that race played a role. Frankly, frankly, whether those concerns were valid or not is not before us. That would be an issue if this were a state suit for unlawful firing or something of that sort. We have to find a specific ground. So I don't really care whether the doctors had a good reason or not, so long as it wasn't an invalid under a law reason. That's right. And the reason is important here because that's the second step in the analysis. What is the employer's good faith basis for the decision that was made? There is no evidence that race played a role other than Dr. Trivedi's unsubstantiated opinion himself. There's nothing in the record that would indicate the doctors who made the decision were motivated by race or anything else. We have affidavits from two members of the executive committee at Joint Appendix 61 and Joint Appendix 69, Drs. Heckman and Cole, who were at that meeting where his termination was discussed. There was no discussion of race. They discussed the fact that a couple of days or a week earlier, he made another bullying complaint about Dr. McDonald talking bad about his practice. It had nothing to do with race. And there isn't evidence in the record that would indicate either race or any protected activity was the basis for the decision. Your Honor, I'd like to talk for a minute about the argument that plaintiff makes regarding spoliation of evidence. We know that Dr. Trivedi made a complaint on March 17th to HR. We know it. Dr. Trivedi sent an email to HR detailing exactly what that complaint was. As counsel has acknowledged, that complaint had nothing to do with race. So HR was simply investigating a claim that one doctor was not being nice to another doctor. And her investigation occurred, for the most part, almost entirely after the decision to terminate had already been made. So there's no evidence that, A, this individual who played no role in the termination decision had a motivation or a culpable state of mind to destroy any evidence. Nor is there any indication that it would have revealed anything that was relevant to the case. Similarly, the plaintiff's attempt to use Dr. McDonald as the source of all of his problems, his termination, etc., is a red herring. Dr. McDonald was a bariatric surgeon. The record indicates he didn't believe that the plaintiff was a good doctor. We have no dispute of that. But the hospital went out and got an independent third party, who is not white, to conduct a review of the plaintiff's cases. That review revealed significant problems. Only a couple months later, a post-operative patient of the plaintiff's died in the hospital. Dr. McDonald played no role in the decision then to have that case again reviewed, which again reviewed more problems. The hospital then decided that it was going to write a letter to the plaintiff saying that we are only going to allow you to retain your privileges to work here under very specific circumstances. Dr. McDonald played no role in that. Dr. McDonald played no role in the surgery JOC's decision or recommendation to terminate. Dr. McDonald played no role in the decision to terminate. So this is a red herring. Clearly, the two doctors did not get along, but Dr. McDonald certainly cannot form the basis for it. Let me go back and say, ask, whether a comment by Ross that the person's color, that Chino's color was responsible. Would that have been admissible at least with respect to notice of the parties? Would it have been admissible for the truth under the adverse party exception to hearsay? Because that is a statement that links to race. Not very strong, but it is there. Was that admissible? District court said no, but I have my questions. I'm not, you know, a district judge, so I'm not an expert on hearsay, but I wonder whether it wouldn't have been admissible under one of the exceptions. Your Honor, this court addressed this very specific scenario in Lawrence v. Melman, which is a case cited in our brief, where you had a physician trying to rely on the statements of other physicians to support an inference of discriminatory motive. In that case, the other physicians allegedly made the exact same statement, that the plaintiff in that case was being treated differently because of his race. In that case, this court very clearly said that those are hearsay statements and therefore not admissible. But, Judge Calabresi, to your other and more significant point, even if that statement is admissible, it does not get the plaintiff over the summary judgment hump in this case. The employer has articulated a legitimate, non-discriminatory, non-retaliatory reason for its decision to terminate the plaintiff. That one statement alone is not enough to establish pretext or that race played any role in the decision, particularly where— Assume that we find that then what your client did was pretextual, but no link of a pretext to race, does this original statement suffice once a neutral pretext has been found and whether sufficient evidence of failure to follow the usual rules is enough to be a pretext for neutral, not linked to race? So, I take issue with that statement that they didn't follow the usual rules. The only evidence in the record that plaintiff submits is that in 2017, the surgery JOC submitted him for termination. We do not know under what clause of his employment agreement that submission was made because that is a crucial factor. If he was being submitted for termination for cause at that time, he would have the opportunity to present a defense. Here, that is not the contractual provision that was being used. Here, he was being terminated without cause. Under the agreement, there is absolutely no obligation to have him or give him that opportunity. So, to say that they used a different procedure is not accurate because we don't know anything about that first time. So, Your Honor, I again would take issue with whether there is pretext. The employer's rationale is clear, straightforward, has not deviated. He was not—he was a risk to patients. He did not get along with his colleagues, and that's why his employment agreement was terminated. Thank you. Thank you, counsel. And you've reserved two minutes for rebuttal. I'll be very brief. Respondent claims they had legitimate nondiscriminatory, nonretaliatory reasons, and they raised these concerns of worsening medical care, risk to patients. Yet, they also say that he was terminated without cause. First of all, it's unfortunate the patient died. That definitely happened in October 2018. It was the first and only patient that died under his watch for nearly a decade. He had very low complication rate, very low mortality rate, very low morbidity rate. But notwithstanding that, patient died, yet Respondent still offers him an employment agreement and does in fact sign that employment agreement to become effective on January 1, 2019. Subsequent to that, there are no additional concerns in the record about patients or anything akin to that, yet they rely on that very heavily with regard to the reason why he was terminated. They also rely on, again, the collegiality aspect, and, again, no support with regard to that. And the only inference is with regard to Dr. McDonald. You know, they also say that Dr. McDonald can't be the source, and, you know, that would be a red herring. And the cat's paw theory would not apply here because he had no control over the terms of employment. However, he's the one who lodged the complaint. He's the one who provided input into these, quote-unquote, independent reviews that was actually done by a bariatric surgeon under Trinity Health, which is the prime corporation of which St. Peter's falls under. He had quite a lot of insight into these reviews, where my client had none. He was not given an opportunity to respond to the latest independent review, and certainly he was not given the opportunity to even present his case, which was a deviation, because when they attempted to terminate him about a year prior to that, he was told of that. It was submitted to the board. He pled his case, and the board decided not to terminate. This time and the last time, they decided not to go that route and terminated him without cause, so certainly not because of patient care. All right. Thank you. Thank you both for your arguments.